### R. D. BOWEN V. HART LAND & IMPROVEMENT COMPANY.

Decided 'December 2, 1910.

**1.—Joint Owners—Partition—Sale of Property.**

Where land can not be equitably partitioned between joint owners it should be sold and the proceeds partitioned; and this method should be pursued even though a part of the land has been improved by one of the joint owners. This rule applied in a suit for partition of four town lots, where it appeared that access to three of the lots would be cut off and their value materially impaired if the fourth lot, which had been improved by one of the owners, was set apart to him.

**2.—Landlord and Tenant—Improvements by Tenant—Right to Remove.**

Where a lease is for a certain term, the tenant has the right only during the term to remove improvements made by him on the leased premises; or if the lease is for an uncertain period, the improvements must be removed within a reasonable time after the termination of the lease. If not removed during the term, or within a reasonable time thereafter, as the case might be, the title to the improvements passes to the owner of the land, and the tenant can not convey a title to the same to a third party.

Appeal from the District Court of Galveston County. Tried below before Hon. Clay S. Briggs.

*John C. Walker* and *Lewis Fisher,* for appellant.

*Geo. P. Robertson* and *Eugene A. Hawkins,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is a suit by R. D. Bowen against

the Hart Land & Improvement Company for partition of lots 11, 12, 13 and 14 in block 739 in the city of Galveston, and for accounting as to rents, improvements, etc.

Plaintiff was the owner of an undivided one-fourth, and defendant of three-fourths interest in the four lots. Plaintiff's contention was that he was the owner of the improvements on both the north and south half of lot 14; that the property was capable of a just and equitable partition in kind, and that in such partition there should be set apart to him lot 14 with the improvements, requiring him, if necessary, to pay so much as was required to make up the excess, if any, in value of said lot 14 over one-fourth of the whole property. He also claimed that in the accounting for the rents he be held entitled to the rents for the improvements on both the north and south halves of lot 14.

On trial without a jury the court adjudged that plaintiff owned one-fourth and defendant three-fourths of the property; that plaintiff was the owner of the improvements on the north half, but not those on the south half of lot 14; that the property could not be equally divided without a sale, on account of the relative location of lot 14 to the other three lots, and that the property should be sold and proceeds divided. In the adjustment of the equities as to rents and improvements, the court in its decree allowed plaintiff the value of the improvements on the north half of lot 14, and of the rents thereof. From the judgment and decree plaintiff appeals.

The material facts are as follows: On January 23, 1895, the property in question was jointly owned by E. J. Hart and W. M. Rice in the proportion of three-fourths to Hart and one-fourth to Rice. The appellee has succeeded to, and is now the owner of Hart's interest. On January 30, 1905, appellant acquired the title to Rice's one-fourth interest, which he now holds. On January 23, 1895, appellant leased from Hart and Rice by separate contracts of lease the north half of lot 14 for a term beginning February 1, 1895, and ending February 1, 1900. At this time there were two buildings on said north half. Appellant bought one of them about 1880 and the other about 1890. Appellant continued to occupy the north half from the date of his lease until he was dispossessed by legal proceedings, at the suit of appellee, on June 1, 1906. Appellant's tenants were parties to this judgment but he was not. On August 24, 1895, Hart and Rice leased to Flood & McRae lots 11, 12, 13, and the south half of lot 14, for a term beginning September 1, 1895, and ending August 31, 1898. Flood & McRae occupied the property leased by them until early in 1901, when they surrendered possession to the owners, leaving it with the improvements on it. On May 23, 1903, E. O. Flood & Co. (E. O. Flood being one of the partners of Flood & McRae aforesaid) leased the property for one year. Under this lease they occupied the property until the end of their term when they abandoned the property. There were no improvements on that part of lot 14 leased to. Flood & McRae and E. O. Flood & Co., when they leased in 1895. During the first term Flood & McRae erected a small brick building on the south half

of lot 14, which building is still on the property. This building was used by Flood & McRae and E. O. Flood & Co., while they occupied the property, in connection with their business of operating a coal yard. In 1895 this building was given to appellant by Flood & McRae under some sort of understanding that "when such disposition could be made of the building as would justify appellant in giving a consideration for the same, he was to do so." Possession of the building was to be given to appellant upon vacating the premises by Flood & McRae. The keys to the building were given to appellant when Flood & McRae and E. O. Flood & Co. finally vacated the premises.

Upon the facts thus found, the court adjudged the equities as to rents and improvements, allowing appellant the value of the improvements on the north half of lot 14 and the rents thereof.

The evidence is sufficient to support the conclusion of the trial court that the four lots could not be equitably partitioned without a sale. While there is some conflict in the evidence on this point, there was evidence sufficient to show that the only access to lots 11, 12 and 13 was over and across lot 14, and that to separate that lot from the others would seriously impair their value. We recognize fully the principle that where one joint owner goes into possession of the common property and makes permanent improvements, in a partition of the property among the owners that part so improved by one joint owner will be set apart to him where it can be done without impairing the rights of the other joint owners, but that principle can not be applied here for the reasons above stated. The first assignment of error presenting this question is overruled.

Nor did the court err in holding that appellant was not the owner of the improvements on the south half of lot 14, as contended by appellant in his second assignment of error. These improvements were placed on the property by Flood & McRae during their first lease. When they abandoned the property under this lease in 1901, leaving the improvements, they became a part of the realty. When Flood & McRae gave the improvements to appellant they passed to him no higher or better title than they had themselves, which was the right to remove them during the term, or at farthest—as they seem to have been allowed to hold over after the expiration of the term according to the terms of the lease—within a reasonable time thereafter. This last is the rule where the tenant holds for a term uncertain as to time of duration. Flood & McRae abandoned the property, and their right under the first lease terminated, in 1901, and no attempt was ever made by them or appellant to remove the improvements. So they became a part of the realty.

What we have said also disposes of the third and fourth assignments of error.

The fifth assignment of error assails the judgment of the court as being contrary to the law and the evidence, in that an insufficient amount of money was awarded to appellant. This complaint is also based upon appellant's claim that he was the owner of the improvements on the

south half of lot 14, and should have been awarded the rents thereof, which can not be sustained.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.